The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated please. All right, first case we'll hear this morning is the United States v. Silva and Mr. Camden we'll hear from you. Good morning Your Honors and may it please the Court, Joseph Camden of the Office of the Federal Public Defender for the Eastern District of Virginia for Mr. Villarreal Silva. The District Court properly held that the jurisdiction stripping provision in this case was simply impossible to reconcile with the Supreme Court's decision in Mendoza-Lopez from 1987. The removal order forms an element of a criminal charge and I think it's important to highlight that the rule would be different between immigration cases and criminal cases. In immigration cases, it's not a jurisdiction to hear claims by the aliens because the consequences are simply civil. So this only comes up in the context where criminal punishment is being imposed that requires proof as an element of the prior removal order. And that is a situation where the Supreme Court held in Mendoza-Lopez the Fifth Amendment requires some kind of meaningful review before that element or before that adjudication, that agency adjudication can be used in a later prosecution to impose a criminal sanction. I frankly and I speculated a little bit in the District Court but I have no idea why this statute was enacted. It was enacted years after Mendoza-Lopez. Mendoza-Lopez had been decided but it explicitly contradicts Mendoza-Lopez in the context of these expedited removal orders. The government's and the District Court so held below, she reached the merits of the decision which I'll get to in a moment but I would urge the court to adopt the District Court's position that this jurisdiction stripping provision is unconstitutional and impossible to reconcile with the Fifth Amendment as explained in Mendoza-Lopez. The government's contrary argument is essentially as I read it and I'll let Mr. Cook obviously give their position but as I understand it they're arguing that there are simply no due process rights in expedited removal proceedings under 1225 and that therefore it's never going to be possible for an alien to be able to show or win a collateral attack so there's no problem stripping courts of jurisdiction and that simply cannot be the case. I think it's important to review what these removal orders really are. Starting big picture there are really three types of removal orders that are used. Well four, there are judicial removal orders which we never say. I've seen one in ten years of practice including seven years at the southern border. Two, there are immigration judge removal orders which is a plenary hearing with the right to counsel at no expense to the government in front of an immigration judge and evidence is received. Three, there are administrative removals under section 1228 which are expedited proceedings but they're the only grounds that the government alleges that there was an aggravated felony conviction and then all of those provide for judicial review and are open to collateral attacks. The only one at issue here are these expedited removal orders and expedited removal, that's what we call them, but it's under 8 U.S.C. 1225b1 and that's a situation, there are two things important to note. One, it doesn't just cover aliens who are coming to the port of entry and are stopped coming in. It covers anybody who's found within a hundred air miles of the border and who can't prove that they've been present for more than 14 days. So these types of removal orders apply to plenty of people who even the government I think would concede have effected already an entry and have some sort of due process interest in a hearing to be able to apply for relief before a removal order is entered. So it simply cannot be the case that everybody subject to these expedited removal orders simply have no due process rights. Second, detention is mandatory under the regulations under 8 CFR 12. I'm a little puzzled why we're stuck back there. Why don't we look at 1326d where Congress gives you means to attack the first element. In other words, they say that you can't consider it unless they have one, two, and three. And it seems to me the issue in this case focuses mostly on three, whether it's fundamentally unfair. And we have cases that interpret what that means. And that gives you the benefit of getting rid of 1225 and you then still have to address what's wrong with the conviction under 1326 when D seems to codify Mendoza. I would agree to a certain extent it codified Mendoza-Lopez. The government conceded fundamental unfairness in Mendoza-Lopez and exhaustion was never really mentioned. But for any purposes, in any case, we are agreeing that 1326d applies. I think the government had pointed out that 1326d and the 1225b1d, the jurisdiction stripping provisions, were enacted in the same public law. And so 1326 is the general right to collateral attack. Except 1326 applies when you're enforcing 1326, which is what they're doing here. Yes, Your Honor. I'm not even sure that we need to look back at 1225 except to determine whether it was fundamentally unfair. I'm going to anticipate what Mr. Cook's going to say a little bit and say 1225b1d does explicitly mention section 1326. It says in any action brought against an alien under 1325a or section 1326, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal under the subparagraphs that apply. So it would seem to me the issue is squarely presented that if we are collaterally attacking a prior removal order in the context of a 1326 proceeding, that d would have to be resolved one way or the other. Either it applies and forbids the district court. Well, if you're looking at the big scheme of things, 1225 wants a down-and-dirty quick removal on somebody who basically hasn't established his roots in the country, and the Congress defined how far that reached. It seems to me that that still functions well. They do not want all the process applied. This is an act of sovereignty basically at the borders. If you're going to convict somebody of a criminal conduct based on that removal, then you're going to have to do additional things. That 1326 and 1326 was added to create some safety when you're involved in a criminal prosecution so that you can go to the validity of one of these quick removals in the conditions listed, specifically listed. And I wonder why that scheme isn't a reasonable way to read these sections. I think it is, Your Honor, honestly. I'm not sure that our briefing exactly covered or addressed it in that way, but our whole argument is that 1326d is the proper route to evaluate the validity of the order underlying this. It looks like you have to have that. I mean, if there's convictions on the 1326, you have to 1326 is written. But the question I have is why do we have to reach back and get rid of 1225, the bar in 1225, when the bar in 1225 could be limited to application in circumstances where there is not a conviction. It's just simply the guy can't challenge his removal. It's a down and dirty removal at the border, and he's been removed. And they don't want the whole judicial process of covering that. But while it reaches broadly, it says no court shall review that. 1326 says just the opposite. It says in a criminal proceeding, in a criminal proceeding, an alien may not challenge a validity unless. And then they have the three gates that gives you opportunities. And it looks to me like, number one, you're safe on because there is no administrative procedure. And number two, at which the order was issued improperly deprived the alien. Well, I don't know how you satisfy that. But I think that the big thing that the government would rely on and try to defend in this case, and we'll hear from the government, but is whether the process was fundamentally unfair. And I think we do sort of import due process notions in that, in our cases. I think what I have to agree, I'd like, in that case, just to talk straight about the due process. I'm not saying that's, I'm raising that. That seems some, I'm not saying that's our, my ultimate conclusion or the panels, but that is an approach that sort of steps forward. And if it's, if it's wrong, I'd love to hear it. I'm not going to disagree with that, Your Honor, as long as we get to the merits, I think. Your yellow light's on. I think you need to address prejudice. Yes, so there were two routes to prejudice that we argued. One is to import the standard from Gonzales versus Duane E. Salvarez. Basically, in the context of the categorical approach, which setting that aside, basically the Supreme Court said that we need to avoid theoretical speculation about how the state or officers would have actually applied the law in practice. And the 1326 prejudice inquiry is very similar. It's reasonable probability versus realistic probability. And really what it asks is, is there, does it offend common sense? Is it really, is there a chance this person would have gotten relief but for the due process violations? And we're not going to speculate or indulge in any kind of fantastical, or how did the government phrase it? It can't be theoretical. It can't just be a mere possibility. It has to be something more than that, but below a preponderance. So when the Supreme Court set that standard, though, for showing that a state law is applied in a certain way, it attached an evidentiary standard to it. It said you can meet this standard if you can point to a case where the law actually was applied in the way, the special way that you're arguing for. So we submitted the case for an individual who was granted withdrawal, who was processed as a withdrawal of application and not ordered to remove, despite having come to the port of entry, made a false statement, being convicted of false statement to a federal officer serving a 12-month sentence with a prior. Why should we consider that case which does that in a situation where there's one, you know, one example of that, and in this case your client by my count is on his eighth illegal entry into the country. Isn't the example you cite so, so different from the facts we have here that, I mean, is it your position we should ignore the reality that this is his eighth effort to enter the country illegally, and that would have no bearing on whether or not he would have been, you know, afforded a discretionary right to withdraw his application? Two answers to that. I think my perspective may be a little different. I've seen people with 30 prior removal orders, or prior actual catch and releases, essentially what they called back in the day. This is along the southern border where at least, this isn't in the record. I'm just speaking from my personal experience, so take it for what it is. But the other situation is there were four catch and releases. I remember in 2014, I think, there was an immigration judge removal order first that we collaterally attacked. The government said they're not relying on it. So there's a gap in there of a long time. And in the meantime, during that time, he had two, at the time of his expedited removal order, he had two United States citizen children here in Virginia. So assuming, and we don't know this, but assuming that they're balancing the equities and deciding whether to grant withdrawal, the removal orders do absolutely count on the negative side, or the prior, even the catch and releases. But there were positive equities. He was working manual labor. He was sending $300, $500 a month back to his family, his parents, not to buy a car or any luxuries, to build them a house, Your Honor. And he did have significant family ties and citizen ties through his children to the United States. What about his criminal record, though? It's there. I mean, it's mostly misdemeanors. The stipulation we had- What is the identity theft? Your Honor, I believe that was a Virginia charge. I believe- Was it a felony? No, I believe it was a misdemeanor, Your Honor. The only felony was the DUI, the second or subsequent DUI, with a sentence of, unsuspended sentence of 90 days. So at that point, he did have criminal history. I would point out the other person, though, probably- You have the burden of proof to show prejudice, correct? Yes, Your Honor. Well, to show the facts necessary to satisfy prejudice. I see I'm almost out of time. I will, I guess on my rebuttal, I would talk, but I'll let the government speak first about the in practice, what factors the officers look at. Since the inspector's field manual was retired in 2013 before this removal, I don't have that information. We requested it. I did not file a motion to compel. But in any case, I'll let the government address that and then speak again on my rebuttal if I could. Thank you, Mr. Camden. All right, Mr. Cook. May it please the court. I'd like to start with the statutory question and then turn to the constitutional question. The statutory question, to pick up on some questions of yours, Judge and 1225B1D is essentially creating a special case for 1325, which is dealing with arriving aliens of a certain type who are subject to expedited removal. And the type is that they have to have misrepresented themselves as U.S. citizens or presented false entry documents or lack entry documents and not make a claim for asylum or fear of prosecution. And for that group of arriving aliens, the language of 1225B1D does change in the government's view, the standard under 1326D. And I think that both of the court of appeals opinions out there that have looked at the interaction of these two statutes, the Fifth Circuit's opinion in Lopez-Vasquez and the Ninth Circuit's in Barajas- Alvarado have both treated that, how I just described the relationship as these two statutes is working. And then the Ninth Circuit said, well, 1225B1D has got to be unconstitutional. Whereas the Fifth Circuit said, well, we're not going to decide that because it wouldn't make a difference in this case. Is the Fifth Circuit assuming jurisdiction and are courts allowed to do that? Well, I think that this is a unusual circumstance. You have to remember what we're talking about here is an affirmative defense. There's no question that there's jurisdiction for the criminal case under 3231. And so the question is, do you have an affirmative defense in this scenario? And as we're described in the brief as a harmlessness analysis, it's like asking a question about a limitation on, for example, an affirmative defense like duress or insanity and saying, well, you know, on the facts of this case, you could never present an affirmative defense of duress or insanity. So why are we analyzing the constitutionality of a limit on that affirmative defense? And that's why I think this is a kind of an unusual circumstance where it is possible for a court to say, look, why talk about the constitutionality of 1225b1d? Whether you look at the validity of the underlying order as being valid or not, this defendant can't show any prejudice. So a typical harmlessness analysis that it would allow a court and a host of settings to say, you know what, we're not going to reach this constitutional question. This has a little bit of a difficulty. I think it's a close question as to how to handle 1225b1d. It's a jurisdiction stripping provision. And rather than being an element, it actually addresses the jurisdiction of the court. And the Supreme Court, as you recognize in many cases, have indicated that we don't construe the elements as jurisdictional, as Congress explicitly says so. And here Congress explicitly says that we should not exercise jurisdiction in collaboratively reviewing 1225 removal. The question I have, and I was trying to explore with your colleague, was whether we could construe that jurisdiction provision to be applicable only to 1225 removals and end it there. That if later it forms an element of a 1326 claim, then Congress said, with respect to that, we're not stripping jurisdiction. We're giving jurisdiction under 1326d, where we remove jurisdiction subject to the exceptions of fairness and so forth. That might be a reading, but I must say the Ninth Circuit's opinion is fairly persuasive in saying that 1225b1d is a barrier that stands in the way and may not be constitutional. I'm not sure. I have serious questions about how to handle that, but I'm not sure we can just assume that jurisdiction and then decide prejudice, because that's exactly what Steel Company told us we shouldn't do. Well, let me briefly touch on the statutory question that I think your Honor was raising about as a reading of 1225b1d and then turn to the constitutional question. As to the statutory question, the language of 1225b1d begins in any action brought against an alien under section 1325 of this title or section 1326 of this title. In light of that language, I think it's really not possible to read that 1225 is talking about anything other than an unlawful reentry prosecution. I think that's a fair observation. Yeah. But as to the constitutional question, I think that what's missing from the Ninth Circuit's analysis and Barajas' Alvarado is the core principle that the Supreme Court has recognized from cases like Knapp v. Chagannassi, which is that whatever the procedure authorized by Congress is, it is due process as far as the alien-denied entry is concerned. And so what the defendant is trying to do here is use Mendoza-Lopez essentially is to increase due process rights for an alien who is an arriving alien by virtue of them having later illegally reentered. And I don't think that that is the way that the overarching standard for due process has worked as the Supreme Court has viewed it. But even if we just, even if we, I think your argument is that the rights, the due process rights might be limited to what the statute or the regulations provide and not beyond that. I mean, don't we still have the question that we've been talking about, the statutory interpretation question? I appreciate what you just said about that, but even if it's a more narrow view of the rights, whether or not you have the rights that the regulation or the statute provides, don't we still have to kind of grapple with the jurisdictional issue? So I think that do you have, the defendant's position is, look, I want you to review provisions in the, that you've been, an arriving alien has been given who falls in this category of, you know, misrepresenting themselves as a U.S. citizen, presenting false entry documents, not claiming asylum and saying, I want you to review rights that there isn't a review mechanism for in the statute. And so that's adding a due process right that Congress hasn't provided. The Supreme Court has said, you get the procedure that Congress gives you and hear the defendant saying, well, I want this additional procedure. And because, which is this review, because Congress hasn't provided that you don't have a due process right to it. So there's an element of circularity going on here. There's also a tension too, because 1225B1D says there shall be no review. We have no jurisdiction to review collaboratively a removal under 1225. Even when we're applying it in 1326, as you point out, but then you go to 1326 and they say the same thing, unless you demonstrate unfairness, which also creates an escape hatch that may save the whole bundle. I don't know. Well, and then you have Mendoza-Lopez, which explicitly says that if the statute envisions a criminal penalty for reentry after deportation, this is at 2155, regardless of how violative of the rights of the alien, then the statute does not comport with due process. And can you tell us, make a distinction between the circumstances of Mendoza-Lopez and the circumstances in this case that would allow us to distinguish that very plain holding? Sure. And I think the critical point is Mendoza-Lopez was not talking about arriving aliens and it wasn't altering the backdrop of the Supreme Court precedent about the limited due process right that arriving aliens have. And so essentially what you have is two lines of constitutional doctrine that in this case are meeting. One is in Mendoza-Lopez, which deals with aliens who have these greater constitutional protections because they're in the United States, which is the circumstance you had in Mendoza-Lopez. And then you have this other line of Supreme Court precedent about the due process rights of arriving aliens who don't have those greater rights and where the Supreme Court has said many times that you get the process that Congress gives you. And so this case essentially presents how those two lines get reconciled. You're saying it just doesn't matter then. As long as you have the removal order, doesn't matter what happened there. Person could have been beaten. Anything could have happened in that removal proceeding and the court is handcuffed. Can I consider it? And it becomes an element of the crime in the criminal prosecution that's been satisfied without any further scrutiny by the court. I want to be very careful to distinguish a whole host of scenarios that would not be presented here that don't get covered by 1225. Right. I'd like you to answer the question if you would, please. What you're saying is that the mere fact of the removal order establishes the element of the crime. Right. And the court is powerless to examine anything concerning the validity of the evidence of that element of the crime. You get the process that Congress provided for arriving aliens. Which is none, you're saying. There is this limited process that is available. Why would you not rely on 1326d in response to that question? Wasn't 1326d added after Mendoza? 1326d and 1225b1d were added together. And so both, I think, have to be read together. Yeah, but after Mendoza, right? That's correct. And they were a codification of the hypothetical that Judge Keenan presented you with, where there is some serious constitutional abuse of some kind. There are very few constitutional rights at the border arriving alien. They just don't have rights there as confronting sovereignty of a nation. But if there is something to raise, 1326d3 gives a gate to raise those things. Well, let me answer the question by going back to response I wanted to give to Judge Keenan, which is, take the case of the border patrol agent who beats someone. You're going to have Bivens claims that are quite separate from an attack on the validity of the removal order. And there could be a variety of constitutional claims that might not give you a right to entry into the United States that would not undermine the validity of a removal order. But there would be a separate matter. Okay, let's take it on then to the criminal prosecution. Does the arriving alien have any due process rights in the criminal prosecution, since you say there are none with regard to the presentation of the removal order to the district court in the trial? Does the arriving alien have any due process rights? Oh, there's an abundance of process in the 1326 prosecution. And so, for example, you know, there's a jury trial right, there's... Right. So what basis is there then to say you have a number of due process rights, but you can't challenge the most basic part of your criminal prosecution? Well, this just goes back to the Supreme Court's analysis of the due process rights of an arriving alien who is seeking admission to the United States. And that question, which is at the core of the validity of the underlying removal order, is one that the Supreme Court has, I mean, there's a quote from the Supreme Court, it's long held that an alien seeking admission to the United States requests the privilege and has no constitutional rights regarding his application for the power to admit or exclude aliens as a sovereign prerogative. Or as the Supreme Court put it, NAFTA versus Shogganassi, whatever the procedure authorized by Congress is, it is the due process as far as the alien denied entry is concerned. Okay, are those appeals from removal orders, or are you talking about the... Appeals from removal orders, right? Right, the underlying... I'm talking about criminal prosecutions, I'm not talking about civil stuff. Sure, but... I'm talking about prosecuting somebody and incarcerating them. And so what is going on when you look at a case like Mendoza-Lopez in its application in this context is the defendant is saying, because I am being prosecuted, my rights as an arriving alien have increased. And there's no ground in the Supreme Court's precedent for saying that actually there's kind of two tracks. There's the alien who's an arriving alien who gets this limited process when subject to an expedited removal order. But if you come back and are prosecuted, now there's this further collection of rights on that removal order that you get because you came back. And that doesn't make any sense. Isn't that reading turning a bit of a blind eye to the holding of Mendoza-Lopez? I don't think it is because, again, Mendoza-Lopez is dealing with a group of aliens who do have a higher footing in terms of their constitutional rights than they have it. They have a... They're both by constitutional doctrine and by the procedures and the regulations and the statutes. They have these review mechanisms. They have that greater right. And so it all makes sense. It works as a system. I get factually that situation is different. And I appreciate what you're saying. I'm just... The holding of the case seems not so narrow. Right. But the Supreme Court, I think that on that point, you have to look at when the Supreme Court's got two lines of authority that arguably could apply and there seems to be some tension, you shouldn't just take the one that seems to create this tension and just ignore it. I mean, you have to respect both the lines of precedent. And if there is a conclusion that, look, one of them has to give way, that's really not for a lower court to do. I mean... It just seems to me that the prejudice takes care of the vast majority of these cases. Right. And I don't understand why the government... Where you have 1225 B1D expressly referring to prosecutions for illegal entry under 1326, why you don't... I mean, what does the government lose in this case by applying the language of Mendoza-Lopez as written and not trying to carve out any distinctions? I mean, almost... It's hard to conceive of too many cases where people are going to be able to prove prejudice. And isn't that really where the government's interests lie? Rather than cutting everybody out no matter what, it's going to be the extremely rare case when somebody is going to be able to show prejudice. Two points in response to that. The first is that the government has a very strong interest in defending the constitutionality of congressional enactments. And that's particularly true in a context where the deference owed to the Congress on immigration law is particularly strong. So it's having reached a reading of these two statutes that I think is pretty powerful, that it does apply to 1326 prosecutions. It's not the executive branch's role to fail to defend Congress's enactments when properly construed to apply in this scenario. But the second point I think Your Honor is making is that when you take the correct view that there is very limited due process application in the context of these cases, even if you say there's review, when you get down to the, okay, what's the due process right that was violated here, it's hard to find anything. And this defendant... The Supreme Court said there has to be some. Well, it has said... And that's vague. I agree. It doesn't really help us much. But it has said in the context of arriving aliens, it's what process Congress gives you. And Congress has given essentially nothing here. I think that's probably your most powerful point is that as an act of sovereignty at the borders, there's almost no process. And basically, the Supreme Court has said whatever processes do is what Congress gives. I mean, theoretically, Congress can exclude everybody regardless. There's just no constitutional protections of people arriving. And so the argument would be that we're not preserving anything by applying 1220... In other words, it would have to be a due process argument of some kind. And Mendoza recognizes some due process, but it can't be recognizing it at the borders, which would be inconsistent with a whole line of Supreme Court cases. Talking about the process at the borders is really just the process that Congress gives. Right. And I think in this case that when you get past the question of what review is available, there is very little to look at here in the way of... I mean, this defendant does not have a valid claim of any kind of right to relief. And that is a reflection of the very narrow rights that would apply to a moving alien. Essentially, his claims are different ways of saying they should have allowed a voluntary departure conceding that this is never going to get admission. But you're talking about the merits of his claim now. Right. Not whether he has the right to challenge. I mean, and that's why I think that we have to start with the realization... This is a very narrow window if there's a right to challenge. It's pretty hard to get through. But it seems to me that you may be confusing success with the fact whether he can raise it in the first place in the context of a criminal prosecution. Well, I think that it's kind of two sides of the same coin because you have, again, this line of precedent that says you get the rights that Congress gives you. And then whenever a court, for example, like the Ninth Circuit says, we're going to look at it, they find that there are just very few rights there. And so there's nothing to do. And so the review that we can't have a limitation on review ends up putting you in the spot of saying, but there's very little in the way of a substantive right to recognize here in the removal order. And so it ends up, I think, in some level becoming almost a semantic distinction. All right. Thank you, Mr. Cook. Mr. Camden. I'd like to start where my colleague left off, Your Honor. I want to make clear the due process violations we're alleging are not independent, free-floating violations. They're violations of the statutes and regulations that Congress enacted. So we agree generally that Congress— What do you envision as the right of process at the border? Somebody arrives at the border and he's summarily rejected because he can't demonstrate any basis that we have announced about any documentation justifying his entry. And what is the due process right that you think is implicated that needs protection? Whatever procedures Congress enacted. Exactly. And so that's exactly, because it's a very reduced level. It's the nation acting as a nation and not regulating the laws within the nation. I agree. They could build a wall and close down the ports of entry and there'd be no due process. Exactly. And you get to the hypothetical, well, what if a border agent shoots somebody else? But that's not an entry issue. That's a totally different issue. And maybe it's a Bivens claim or whatever it is. But the idea is that when somebody arrives at the border and he's denied it summarily because of the reasons Congress said, which are in that documentation, basically, or he misrepresents his documentation, Congress said, that ends it. He's forfeited any consideration that we are prepared to give him. I want to make a distinction here. We are not saying that Mr. Virel Silva had a due process right to enter the country. No, but the question is important in this case for analysis because 1225 B1D says courts should not get involved in this. And the question is, does that violate Mendoza? And the question is, depends how you read Mendoza and depends how much due process you think exists. And when you start looking at how much due process exists, then you look at these Shaughnessy type cases, the whole line of cases, and say, well, there's nothing much except what Congress says. You have a right to present documents, and if they're false, you're done. Right. But so here's the thing. Under 1225, under the old cases, Landon versus Plasencia and Knopf and everything, there were exclusion procedures or denial of admission. So they could just stop you at the port of entry and say, no, you can't come in. That's not 1225. 1225 abolished that simple removal or that simple- As you know, we don't have a wall along the whole border. We don't have an agent at every square foot. And so we treat somebody who's arriving at the gate the same as a person who arrives at the gate and is not discovered but within 100 miles of the gate. In other words, that's a conceptual thing. It's a little bit like somebody arriving by airplane in Chicago. That's his port of entry. I mean, that's where he's confronting the United States and said, I want to be in. Yet Chicago's in the center of the country. But I don't think that gets you very far because it doesn't address any further rights that you have. He's still arriving alien. At least the way Congress is defining arriving alien. When it was determined that he had used false documents, and we're not disputing that, there were two things that could have happened. One, they could have just processed him as a withdrawal and he walks back into Mexico. Or two, they enter an order of removal. Now, order of removal comes with, it's not simply denial of admission. It's not simply denial of benefit. It comes with affirmative penalties being imposed. If you look at USC 1182A9, it imposes a five-year ban on future applications, not just entries, future applications for anybody who has been ordered removed under 1225. The closest thing to a denial of admission is 1225A4, the withdrawal of application. In the last year that CBP published statistics, 2004, 70% of people who were deemed inadmissible were allowed to withdraw their application and go back to wherever they were coming from. So that is the real procedure that replaced denial of admission that the Supreme Court talked about. It is, Your Honor, yes. So the thing is, we're not alleging he was entitled to withdraw. It's just that Congress set these procedures and the Attorney General published regulations that said things like, in every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts in the case and statements made by the alien that shall be accomplished by means of a sworn statement using Form I-867A and B, Record of Sworn Statement and Proceedings. That's the due process violation we have, is he never got a chance. The alien doesn't have a right to that. That's imposed on the officer, isn't it? Well, it's a requirement. That's an administrative record keeping. No, the alien, quote, the alien shall be given an opportunity to respond to those charges in the sworn statement. That's what the process he's given. Right, right. And that's the process he was deprived of, though. So Congress, we're not saying that we can, this isn't a due process challenge to the facial validity of the statute. We're saying Congress set these procedures. The immigration officer didn't follow them in this particular case. My question, I suspect, is that process, which is a very limited level of process, is that the process being addressed in Mendoza? Or how does Mendoza square with O'Shaughnessy, some of these, the whole doctrine of American sovereignty at the borders? It doesn't exactly, but they never really got to that issue, Your Honor, because. I understand that. Well, the due process violation alleged in Mendoza-Lopez was that the immigration judge had told them about discretionary relief, suspension of deportation, but had failed to adequately explain it and answer their questions on it. And the Supreme Court held that that actually deprived them of judicial review. That was the deprivation of judicial review, so. All right. Thank you. Thank you. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Barbara Milano Keenan, A. Marvin Quattlebaum Jr.